# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2661 | **DATE** | 9/30/2003 |
| **CASE TITLE** | JOHN O'SULLIVAN vs. CITY OF BURBANK, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants defendants' motion for summary judgment. This case is hereby terminated. (23-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 40 |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 SEP 30 PM 12:04 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN O'SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| CITY OF BURBANK, BURBANK CHIEF OF | ) | 02 C 2661 |
| POLICE WILLIAM M. KUJAWA, in his | ) | |
| individual capacity, CAPTAIN BRUCE | ) | **DOCKETED** |
| RADOWICZ, in his individual capacity, | ) | |
| LIEUTENANT JOHN TOUHY, in his | ) | SEP 3 0 2003 |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John O'Sullivan has sued the City of Burbank ("the City"), chief of police William Kujawa, Captain Bruce Radowicz, and Lieutenant John Touhy for retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and for denial of his constitutional right to equal protection pursuant to 42 U.S.C. § 1983. Defendants have moved for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

## FACTS

Unless otherwise indicated, the following facts are either undisputed or have been deemed admitted because of noncompliance with LR 56.1, which this Court strictly enforces, or because the party's denial was unsupported by the citations to the record or by admissible

40

evidence, *e.g.*, hearsay.[1] O'Sullivan is employed as a Sergeant for the City of Burbank police department. (Def.'s LR56.1(a)(3) Stmt. ("Def.'s LR56.1(a)(3)") ¶ 1.) One of O'Sullivan's job duties as Sergeant is to supervise other employees, including Joan Nebel. (*Id.* ¶¶ 2, 5.) O'Sullivan also worked outside of the City of Burbank Police Department as a security officer at a local high school. (*Id.* ¶¶ 9-10.)

Kujawa and two Captains prepare shift schedules for the entire police department. (*Id.* ¶ 6.) Seniority does not play a role in determining which shift is assigned to an officer. (*Id.*) In addition, sergeants are not guaranteed a particular shift assignment and must be available to work all shifts. (*Id.* ¶ 7.) The respective shifts are: day shift, from 6 a.m. to 6 p.m.; midnight shift, from 6 p.m. to 6 a.m.; and the power or cover shift, from 2 p.m. to 2 a.m. (*Id.*) It is not uncommon for schedule changes to occur. (*Id.* ¶ 62.)

On March 9, 1999, O'Sullivan testified at the union grievance hearing of officer Joan Nebel. (*Id.* ¶ 16.) Neither Nebel nor O'Sullivan suggested at any time during the hearing that sex or gender discrimination played a role in Nebel's discipline. (*Id.*) The Illinois Labor Relations Board ordered that the portion of the decision in favor of Nebel posted in the police department. (Pl.'s LR 56.1(b)(3)(B) ¶ 81.)

In October and November 1999, O'Sullivan was assigned to ride along with Joan Nebel to observe her for a period of three to four months. (Def.'s LR56.1(a)(3) ¶ 29.) Three other officers were also assigned to ride along with Nebel during that time. (*Id.*) O'Sullivan states that the ride-along assignments during this period of time served legitimate departmental objectives.

---

[1] The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (listing cases).

2

(*See* Pl.'s LR56.1(b)(3)(B) ¶ 230 ("Contrary to Plaintiff's May 1, 2000 Assignment, Ride Along Assignments between October 28, 1999 and January 31, 2000 Served Legitimate Departmental Objectives").)

In January 2000, Nebel filed an EEOC charge against the City of Burbank for discrimination. (Pl.'s LR56.1(b)(3)(B) ¶ 293.) The record does not describe what type of discrimination Nebel alleged in the charges. (*Id.*; Pl.'s Ex. W, Nebel Dep. at 117.)

On April 24, 2000, O'Sullivan attended but did not testify at a fire and police commission hearing involving disciplinary charges filed against officers Nebel and Raymond Herbert. (*Id.* ¶ 35.) O'Sullivan sat in a chair behind Nebel and Herbert. (*Id.*) Nebel did not raise the issue of gender discrimination during this hearing. (*Id.*) One way a person may show support at a hearing is to sit on one side of the room (divided by an aisle) or the other. (Defs.' LR 56.1(a) Reply ¶ 180.)

On April 27, 2000, Chief Kujawa and Captain Radowicz assigned O'Sullivan as the sole officer to ride along with Joan Nebel, effective May 1, 2000 until further notice. (Pl.'s LR56.1(b)(3)(B) ¶¶ 184, 187.) O'Sullivan's schedule was altered to match Nebel's patrol schedule. (Pl.'s LR56.1(b)(3)(B) ¶ 189.) O'Sullivan reduced his hours working as a security officer at the high school as a result of the shift change. (Def.'s LR 56.1(a) ¶ 46). O'Sullivan's assignment to ride along with Nebel in the paddy wagon lasted six weeks.[2] (Pl.'s LR 56.1(b)(3(B) ¶ 187; Defs.' LR 56.1(a)(3) ¶ 37, Defs.' Ex. A, O'Sullivan Dep. at 48.)

---

[2] Although plaintiff avers that assignments to drive the paddy wagon are viewed as a punishment in the police department, the Court finds that the officer who so testified merely speculated that such was the case and is not the type of officer who would make such assignments. (Pl.'s LR 56.1(b)(3)(B) ¶ 211.) Accordingly his testimony is inadmissible and therefore this statement is stricken as unsupported by the portion of the record cited.

3

In March 2001, O'Sullivan spoke to an Illinois Department of Human Rights Investigator concerning Nebel's filing a charge of discrimination against the City of Burbank. (Def.'s LR56.1(a)(3) ¶ 60.) In September 2001, O'Sullivan submitted a letter to the EEOC regarding Nebel's charge, but marked it "confidential" and noted that he "did not want [the letter] released to a third party." (*Id.* ¶ 61.) O'Sullivan does not know whether anyone in the City of Burbank police department ever saw this statement. (*Id.*)

O'Sullivan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2000. (*Id.* ¶ 11.) He filed the instant complaint on April 12, 2002. (*Id.* ¶ 15.)

## DISCUSSION

Summary judgment is appropriate when the moving party's evidence establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Resource Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). A court considering a motion for summary judgment must draw all inferences from the record in the light most favorable to the non-moving party. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). The moving party is not entitled to summary judgment when a reasonable jury could return a verdict in favor of the non-moving party based on the evidence in the record. *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). "The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence on which a jury could reasonably find for the plaintiff. *Id.*

## I. Title VII Retaliation Claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "A plaintiff has two means of proving Title VII retaliation: the 'direct method' and the 'indirect method.'" *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Logan v. Kautex Textron N.A.*, 259 F.3d 635, 638-39 (7th Cir. 2001)). Both methods, however, require plaintiff to establish that he engaged in protected activity. *Stone v. City of Indianapolis Publ. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2001).

The Court finds that O'Sullivan's retaliation claim fails because he has not raised a genuine issue as to a material fact with regard to whether he engaged in protected activity prior to the alleged retaliation. The statements of fact, responses to the statements of fact, and the record cited in support of the particular factual propositions provided therein are devoid of any fact that would lead to a reasonable inference that O'Sullivan opposed defendants' purported discrimination of Nebel based on gender prior to the retaliation he argues occurred in Spring 2000.[3] The Court notes that the parties "cannot leave it to this court to scour the record in search of factual or legal support for this claim." *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 593 (7th Cir. 1992).

---

[3](*See* Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 12 (solely addressing to May 2000 schedule change with regard to retaliation).)

5

Prior to the alleged retaliation, O'Sullivan never expressly opposed gender discrimination against Nebel. (Defs.' LR56.1(a)(3) ¶ 63.) Upon extensive review of plaintiff's cited portions of the record in response to this statement of fact, the Court holds that plaintiff's citations do not support a denial of this fact. The cited portions of the record merely show that O'Sullivan appeared to support Nebel in the context of two hearings that did not involve issue of gender discrimination and wrote memoranda and spoke to defendants concerning his being mistreated for his support of Nebel at those hearings.

The first hearing, which occurred in March 1999, concerned Nebel's grievance against the City of Burbank before the Illinois Labor Relations Board regarding alleged threats of retaliation against bargaining members for any officer who filed a grievance as well as retaliation for her having filed a grievance in February 1998 alleging that the posting of the March 1998 work schedule violated the Illinois Fraternal Order of Police bargaining agreement because it was not posted within the required time frames and adversely effected patrol officers. (Pl.'s Ex. I, Illinois Labor Relations Board Order.) Because this hearing did not involve any allegations of gender discrimination, O'Sullivan's support of Nebel with regard to this first hearing may not be deemed protected activity.

The second hearing, which occurred in April 2000, concerned disciplinary charges filed against Nebel and a fellow officer Raymond Herbert for their failure to respond to a call to a home invasion occurring a half block from their location because they were ordering their lunch and took a forty-eight minute lunch. (Defs.' LR56(a)(3) ¶ 31.) At the hearing, Nebel faced additional charges that she failed to properly search a female detainee who was later discovered to have marijuana on her person and that she failed to appear in court as assigned. (*Id.*)

O'Sullivan attended a portion of the hearing and sat behind Nebel and Herbert on their side of the aisle in the hearing room. (*Id.* ¶ 33.) Although an officer's sitting behind another officer at such a disciplinary hearing is a way of showing support for her, it would be unreasonable to infer that such conduct shows support in opposition of gender discrimination because the hearing did not concern any complaint of gender discrimination. Accordingly, the Court finds that O'Sullivan's conduct at the second hearing does not constitute protected activity.

Further, O'Sullivan's complaints up the chain of command that he was being mistreated due to his support of Nebel at the grievance hearing and the disciplinary hearing do not mention gender discrimination. Neither the statements of facts nor the statements in response thereto aver that he mentioned gender discrimination, and again, the Court is not required to comb the record to find such factual support. As such, it would be unreasonable for the Court to infer from the statements of fact that he had opposed retaliation based on his support of Nebel and her claims of gender discrimination, rather than opposing retaliation based on his support of Nebel and her grievances against defendants and/or her defense against disciplinary action, neither of which concern gender discrimination.

In his statement of additional facts, plaintiff clearly relies solely on his support for Nebel at both hearings as the basis for the retaliation. However, in plaintiff's rather abbreviated argument regarding his retaliation claim in response to the motion, he apparently shifts his theory as to what he believes was protected expression. (*See* Pl.'s Mem. Opp. Defs.' Mot. Summ J. at 12-13.) However, the fact that Nebel filed her IDHR discrimination charge in January 2000 merely creates an inference that defendants were aware of *her* protected activity and does nothing to create a reasonable inference that O'Sullivan himself engaged in protected activity. Further,

7

O'Sullivan cannot base his retaliation claim on the facts that O'Sullivan spoke to an IDHR investigator in March 2001 and submitted a confidential affidavit in September 2001 with regard to Nebel's charge of discrimination because such conduct occurred *after* the alleged retaliation in Spring 2000.

The Court finds that plaintiff has failed to establish a genuine issue as to a material fact with regard to whether he engaged in protected activity. To hold otherwise would be to negate the plain language of Title VII's requirement that a plaintiff must establish that "he has opposed any practice made an unlawful practice *by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing *under this subchapter*." 42 U.S.C. § 2000e-3(a) (emphasis added). Accordingly, the Court need not address defendants' other arguments in support of its motion for summary judgment. The Court thus grants defendants' motion for summary judgment as to O'Sullivan's Title VII retaliation claim.

## II. Section 1983 Equal Protection Claim

In any section 1983 action the plaintiff must prove two essential elements. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination . . .

8

occasioned . . . by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923). "The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). "A class of one is likely to be the most vulnerable of all," and accordingly, such a class should not be denied the protection of the equal protection clause. *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).

To be meritorious in his claim, plaintiff must demonstrate that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To make out a *prima facie* case, plaintiff "must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). It is plaintiff's burden "to come forward with any evidence to negate the stated rational bases by [defendants] for implementing the challenged policy." *Price v. City of Chicago*, No. 99 C 7864, 2000 WL 1468318, at *5 (N.D. Ill. Aug. 29, 2000). In addition, plaintiff must demonstrate as an essential element of his case that he was treated differently than someone who is "*prima facie* identical" in all relevant respects. *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Defendants first argue that O'Sullivan is barred from basing his section 1983 claim on certain events because he filed the instant complaint after the statute of limitations had run. In a footnote in his response to the summary judgment motion, O'Sullivan limits his two-sentence argument to the July 1999 reprimand and states that the reprimand was part of a "pattern of

spiteful and unequal conduct." (Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 15 n.1.) Therefore, the Court need only address whether the July 1999 reprimand is time-barred. Plaintiff has waived any argument regarding the tolling of the statute of limitations as to any other event that occurred prior to April 12, 2000.

"To determine the proper statute of limitations for section 1983 actions, the federal court adopts the forum state's statute of limitations for personal injury claims." *Mitchell v. Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002). "Pursuant to 735 ILCS 5/13-202, the statute of limitations for section 1983 cases filed in federal court is two years." *Id.* "[B]ecause 'the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application,' federal courts must 'also borrow[ ] the state's tolling rules--including any equitable tolling doctrines.'" *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001) (quoting *Smith v. City of Chicago Heights*, 951 F.2d 834, 839-40 (7th Cir. 1992)).

Due to its brevity, plaintiff's footnote fails to pinpoint whether he believes equitable estoppel or equitable tolling applies. Because there are no facts in the record upon which to base an equitable estoppel argument, the Court focuses on equitable tolling, which the Court finds inapplicable as well.

"Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). "[T]he [plaintiff] can get an extension of time within which to sue if it would have been unreasonable to expect him to be able to sue earlier." *Id.* "An essential element of equitable tolling is that 'the plaintiff have exercised due diligence; in other words that he have acted

10

reasonably.'" *Mitchell*, 286 F.3d at 450.

The facts do not support equitable tolling. O'Sullivan states that he was forced to appeal the July 1999 reprimand from Lieutenant Ford because the reprimand was not about the mistakes on his report and was more about his being responsible for Nebel winning her case with regard to the March 1999 Illinois Labor Relations Board hearing. (Pl.'s LR 56.1(b)(3)(B) ¶ 149 (citing Pl.'s Ex. A, O'Sullivan Dep. at 36.).) Because O'Sullivan avers that he believed at the time of the July 1999 reprimand that it had no legitimate basis, it would not have been unreasonable to expect him to sue defendants for violation of his equal protection rights earlier. Therefore, equitable tolling cannot save his section 1983 claim based on the July 1999 reprimand.

Defendants next argue that Kujawa, Radowicz, and Touhy are entitled to qualified immunity and even if the Court determines that they are not entitled to such immunity, plaintiff has failed to sustain his burden of creating a genuine issue as to a material fact regarding whether defendants violated his right to equal protection.[4] The Court addresses each in turn.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1987). "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade*, 850

---

[4]The Court presumes that the conduct of which O'Sullivan complains comports with *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), because the City has not raised, and therefore has waived, such municipal liability defenses.

F.2d 1180, 1209 (7th Cir. 1988). Plaintiff "bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Id.* While the facts of the purported violation need not be identical to those in prior holdings, the plaintiff is required to show cases that are closely analogous to the facts at hand before the Court will find that the constitutional right was clearly established. *Id.*

In relying on *Esmail v. McCrane* and other cases, plaintiff has met his burden of establishing the clearly established equal protection right for a "class of one" to be free from "action taken by the state . . . [that] was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." 53 F.3d 176, 180 (7th Cir. 1995); *see Village of Willowbrook v. Olech*, 528 U.S. 562, 1074-75 (2000); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Because O'Sullivan has established a clearly established constitutional right, the Court must then determine whether a reasonable person in defendant's position would have known that he was violating that constitutional right.

"[A] qualified immunity analysis entails a purely objective inquiry to determine whether at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz v. Parrott*, 883 F.2d 551, 554 (7th Cir. 1989). "In other words, a court must consider the legitimacy of the actions as if another person had taken them for different reasons." *Baltzer v. City of Sun Prairie*, No. 88 C 693 C, 1990 WL 600074, at *3 (W.D. Wisc. Mar. 6, 1990).

The facts show that Touhy, as the lieutenant in charge of O'Sullivan and Nebel's shift during May 2000, counseled O'Sullivan for disobeying his instructions when O'Sullivan

12

completed an incident report even after Touhy instructed him that Nebel was to do so, and Touhy showed O'Sullivan a reprimand Touhy had written up detailing his insubordination. However, Touhy eventually decided not to issue the reprimand. Given the specific facts of the situation and Touhy's conduct in response, O'Sullivan has not shown that Touhy's conduct deprived him of the equal protection of the law. There is no evidence in the record to support that Touhy did not threaten to reprimand or investigate others who failed to follow his instructions. He has thus failed to meet his burden of establishing that others who are *prima facie* identical to him received different treatment in this respect. Alternatively, Touhy is entitled to qualified immunity because a reasonable person in Touhy's position would not have known that his conduct deprived O'Sullivan of his equal protection rights. Therefore, defendants' motion for summary judgment is granted with regard to Touhy.

With regard to Radowicz[5] and Kujawa's conduct, viewing all facts in plaintiff's favor, three days after O'Sullivan showed support for her by sitting on her side of the aisle at her April 2000 disciplinary hearing, a fact of which these defendants were aware, they changed his schedule to a patrolman's schedule[6] and assigned him to ride along with Nebel for six weeks,

---

[5]O'Sullivan also complains that during his six-week ride along with Nebel, Radowicz ordered him to submit a "to-from" memorandum regarding fifteen minutes of additional lunch time he took and by ordering him to document his reason for drafting the report related to a burglary to which he and Nebel had been called. The Court holds that O'Sullivan has failed to raise a genuine issue as to a material fact regarding whether Radowicz treated other officers who took too long at lunch and drafted reports for other officers differently. Thus he fails to show that others who are *prima facie* identical to him were treated differently. Accordingly, the Court grants defendants' motion for summary judgment as to this conduct.

[6]For the six-week period, O'Sullivan was switched from a twelve-hour shift, which involves working three days then being off four days and working four days and being off three days, to a "day off key five" shift, to a patrolman's shift, which involves working six days in a

13

which in effect reduced the number of officers he supervised to solely Nebel for that period. All of the sergeants were qualified to ride along with Nebel but O'Sullivan had the type of supervisory and field training experience that was necessary and thus, O'Sullivan was the only one so assigned. The question then is whether a reasonable person in either of Radowicz or Kujawa's position would have known that they could not assign O'Sullivan to the patrolman's shift with Nebel, based on his supervisory experience and qualitative differences between his field training experience and that of other supervisors, after he showed support for Nebel at a disciplinary hearing days earlier. The answer is no. A reasonable person in either defendant's shoes would not have thought there was no legitimate relationship between the reassignment and the governmental interest in ensuring that the most qualified personnel are employed to supervise and train its patrol officers. Accordingly, the Court grants defendants' motion for summary judgment with regard to Radowicz and Kujawa's qualified immunity.

Even if the Court were to hold that the individual officers were not entitled to qualified immunity, the Court finds that it must grant summary judgment in all defendants' favor because O'Sullivan has not created a genuine issue of fact with regard to each of the City's purported reasons for selecting him to ride along with Nebel. The City states that it assigned O'Sullivan to perform the ride-along with Nebel because O'Sullivan was the most qualified for the assignment due to his training in the field training program, his supervisory experience, his academic training, and his report writing. (Defs.' LR 56.1(a)(3) ¶ 37; Defs.' Ex. E, Radowicz Dep. at 65-66.) With regard to report writing, it is undisputed that O'Sullivan did not exhibit any

---

row then being off two days with every sixth and seventh weekend off. (Pl.'s LR 56.1(b)(3)(A) ¶ 38; Pl.'s Ex. H, Davey Dep. at 34.)

proficiency in report writing above and beyond any other supervisor and that his academic training occurred fourteen years prior to his ride-along assignment with Nebel. (Pl.'s LR 56.1(b)(3)(B) ¶ 236.) Thus, a genuine issue exists as to that reason. It is also undisputed that all of the sergeants were qualified to do ride-alongs with Nebel and that all supervisors have field training experience. (*Compare id.* ¶ 237, *with* Defs.' LR 56.1(a)(3) ¶ 237.) However, the fact that all supervisors were qualified to do ride-alongs and have some field training experience does not mean that there was no qualitative difference between O'Sullivan and the other supervisors that made him a better choice. Further, O'Sullivan has not addressed the City's rationale that his supervisory experience made him a better choice than the other sergeants. (*See* Pl.'s LR 56.1(b)(3)(A) ¶¶ 37-38; Pl.'s LR 56.1(b)(3)(B) Stmt.) Under the equal protection rational basis analysis, it is O'Sullivan's burden to raise a genuine issue as to a material fact that would negate each and every one of defendants' reasons for his being assigned to ride along with Nebel. This he has failed to do. Because he has failed to rebut at least one of defendants' legitimate state objectives, the Court grants summary judgment in favor of defendants.

## CONCLUSION

For the forgoing reasons, the Court grants defendants' motion for summary judgment [doc. no. ]. This case is hereby terminated.

SO ORDERED      ENTERED: 9/30/03

HON. RONALD A. GUZMAN
**United States Judge**

15